# SPIVA *vs.* STAPLETON.

[ACTION TO RECOVER OVERSEER'S WAGES.]

1. *Opinion of witness as expert.*—In an action to recover stipulated wages as an overseer, the question being whether plaintiff performed his

duty as an overseer, a witness who frequently saw the defendant's plantation while the plaintiff was in charge of it, and who is shown to have been an overseer for five or six years, may state that, in his opinion, plaintiff "managed pretty well."

2. *Proof of negligence by overseer.*—Defendant having adduced evidence showing that, during the year plaintiff was acting as overseer on his plantation, the supply of corn on the place was all consumed by June, he cannot be allowed to prove that, during the next year, under a different overseer, the number of persons, stock, &c., being the same as in the preceding year, the same quantity of corn lasted until September.

3. *Evidence rebutting proof of negligence.*—In such case, proof of the bad quality of the corn on the place when plaintiff took charge of it, would be competent evidence for him, in rebuttal; but proof of the bad quality of the corn raised in the neighborhood, unaccompanied with proof of any general cause affecting the crops of that neighborhood, or with evidence showing that, in quality of soil and mode of cultivation, defendant's plantation corresponded with the lands in the neighborhood generally, is too remote and uncertain to go to the jury for that purpose.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. NAT. COOK.

THIS action was brought by John T. Stapleton, against Edward A. Spiva, to recover the sum of $450, alleged to be due from defendant to plaintiff "for services rendered as an overseer during the year 1857"; also, the same amount, as "the price agreed to be paid by defendant to plaintiff for acting as overseer of his hands and plantation for the year 1857"; also, the same amount, "due by account on the 1st day of January, 1858, for work and labor done by plaintiff for defendant, at his request, during the year 1857." "The principal defense insisted on," as the bill of exceptions states, "was, that plaintiff had neglected his duty, and violated his contract, and had been discharged by defendant, for good cause, in August, 1857." The matters here assigned as error are the several rulings of the court below on the evidence, which are thus stated in the defendant's bill of exceptions:

"In proving performance on his part, plaintiff introduced a witness, who had been an overseer for five or six

years, and who testified, that he understood the business of an overseer, and that he frequently saw the defendant's plantation; and, in answer to a question by plaintiff, said, 'I think he (plaintiff) managed pretty well.' The defendant objected to this answer, as illegal and incompetent, and insisted, that the witness should state facts, and let the jury determine whether the plaintiff managed well or not, and moved to exclude said answer from the jury; but the court overruled his objection and motion, and the defendant excepted.

"There was proof tending to show that, when plaintiff went on defendant's plantation, there were some fifteen or sixteen hundred bushels of corn on the place; but there was a conflict of proof as to the quantity; and that one thousand bushels of corn was enough to do the place from January to September, when new corn would come in; but there was a conflict in the evidence, also, as to whether the corn on the place when the plaintiff went there was sufficient. There was proof, also, tending to show that the corn was out in June, and that defendant had to buy corn for his plantation in Mobile in June. It was shown that, when the plaintiff went on the place, the corn on it was in a crib and two rail pens, and that said crib and pens were then full. The number of white persons, negroes, mules, and other stock on the place, to be fed out of said corn in 1857, was also shown. Defendant offered to show that, in 1858, under another overseer, and with about the same number of persons, mules, stock, &c., the same crib held the corn fed to them during the year, and lasted until September; and that they were well fed, and had plenty. The court ruled out this evidence, on the plaintiff's objection; and the defendant excepted. Plaintiff introduced proof, also, showing that the bulk of corn, when put up in the shuck, as this was in 1857, was very deceptive, and that the actual quantity of corn—(?) On this point, plaintiff asked a witness, what was the quality of corn raised in the neighborhood of defendant's plantation in 1856; to which question the defendant objected, as illegal and in-

competent; but the court overruled his objection, and he excepted."

ALEX. & JNO. WHITE, for appellant.
BYRD & MORGAN, contra.

R. W. WALKER, J.—[1.] Construing the bill of exceptions most strongly against the appellant, we understand the statement, that the witness "saw the plantation frequently," to refer to the period when the plaintiff had charge of it. Placing this construction upon the bill of exceptions, the court did not err, in permitting the witness, who was shown to be an expert, to give his opinion that the plaintiff "managed pretty well."—*City Council v. Gilmer*, 33 Ala. 133; 1 Greenl. Ev. § 440; *McCreary v. Turk*, 29 Ala. 244.

[2.] The evidence that, in 1858, the same crib full of corn lasted the same number of persons, mules, stock, &c., until the month of September, was properly excluded. The value of such testimony as a basis for the presumption of carelessness or wastefulness on the part of the plaintiff, would depend on a number of collateral circumstances; such, for example, as the extent and condition of the pastures on the place in each year, the amount of other descriptions of forage used, the quality of the corn, &c., &c. An inquiry into these various matters would have led to an indefinite multiplication of the issues; and for this reason, if no other, the evidence was properly rejected.

[3.] Proof of the bad quality of the corn on the place when the plaintiff took charge, would have been competent evidence for him; and the testimony showing the quality of corn raised in the neighborhood in 1856, was doubtless offered with this view. For the purpose of raising the presumption, that the corn on the place when the plaintiff took charge was of bad quality, it is possible that testimony showing that the corn raised in 1856, in the neigborhood of said plantation, on lands of the same description and similarly cultivated, was generally of bad

quality, would have been admissible.—*Steele & Burgess v. Townsend*, 37 Ala. 247; *Johnson v. Lightsey*, 34 Ala. 173. But the testimony admitted was, in general terms, that the quality of corn raised in the neighborhood of the plantation in 1856, was bad; and this, we think, was too remote and uncertain to go to the jury, unaccompanied, as it was, by proof of any general cause affecting the crops of that neighborhood, or that, in respect of quality of soil and mode of cultivation, this particular plantation corresponded with the generality of the lands in the neighborhood. 1 Greenl. Ev. § 52; *Gilmer v. City Council*, 26 Ala. 669.

Judgment reversed, and cause remanded.