# Bricken *v.* Sikes.

### Damage for Loss of Horse.

(Decided April 6, 1915.   Rehearing denied May 11, 1915.
68 South. 801.)

1. **Livery Stable Keepers; Care Required; Ordinary Care.**—The delivery of a horse and vehicle to a livery stable keeper for hire creates a bailment for mutual benefit, rendering the bailee liable for injury or loss resulting from a failure to take ordinary care of the property; that degree of care which would be taken by a person of ordinary prudence under the same circumstances.

2. **Actions; Joinder; Statute.**—Under § 5329, Code 1907, the bailor of chattels for hire may join against the bailee, his cause of action in case for loss or injury to the property, for negligence in performing the duties growing out of the bailment, and in assumpsit for breach of the bailment contract.

3. **Bailment; Mutual Benefit.**—Where the bailor sues the bailee for hire for loss or injury to the goods, and shows the bailment and the injury, or a failure to redeliver the goods on demand, or a redelivery in a damaged condition, the burden then shifts to the bailee to show his freedom from negligence, and this he may satisfy by showing that the loss is caused by an accidental fire not due to his own negligence.

4. **Same.**—When the mutual benefit bailee shows that the property was destroyed or injured as the result of an accidental fire not due to his own negligence, the burden then shifts to the bailor to show that the property could nevertheless have been saved but for a want of proper care on the part of the bailee in failing to take proper measures for its protection against loss in case of fire.

[Bricken v. Sikes.]

5. **Same; Ordinary Care.**—What will constitute ordinary care for the protection and preservation of goods in case of fire so as to relieve the mutual benefit bailee from liability for their loss in an accidental fire not due to his negligence, is usually a question of fact for the jury, when there is substantial evidence upon which to submit such an issue.

6. **Livery Stable Keeper; Negligence; Jury Question.**—Whether the bailee took proper precautionary measures to guard the horse and vehicle committed to his care against loss in case of fire, was for the jury under the evidence in this case.

7. **Same; Evidence; Opinion.**—The issue being whether the livery stable keeper should have kept a person in his stable at night in order to protect the stock therein against fire, it was not permissible for a witness to state whether, in its judgment, it was or was not necessary.

8. **Trial; Objection to Evidence.**—Where the only objection interposed to the admission of improper evidence is predicated upon an untenable ground, the court will not be put in error for admitting the evidence.

9. **Appeal and Error; Harmless Error; Evidence.**—Where a witness subsequently answered the question without objection, the action of the trial court in sustaining objection to a previous question calling for such evidence was rendered harmless.

10. **Same.**—Where the facts which such evidence tended to show was otherwise proven without dispute, the exclusion of admissible evidence was harmless.

11. **Livery Stable Keeper; Evidence; Opinion.**—Where the action was for damages for the destruction of a horse and vehicle in a fire in a livery stable, questions to a witness if it would not have been impossible for the horses to have been gotten out without a watchman at the stable, and whether there would not have been a chance to have gotten them out if a watchman had been there, were objectionable as calling for a conclusion.

12. **Same; Loss by Negligence; Instructions.**—Where it was unquestioned that if there was negligence by defendant as to the horse, there was necessarily such as to the buggy and the harness, an instruction that the jury could not find for plaintiff unless they were reasonably satisfied that the destruction of the horse was proximately caused by the negligence of defendant was not prejudicial error.

13. **Appeal and Error; Harmless Error; Pleading.**—Where two counts went to the jury, under which all the evidence was introduced, that might have been introduced under another count, to which demurrer was erroneously sustained, the sustaining of the demurrer was harmless.

APPEAL from Crenshaw Circuit Court.

Heard before Hon. A. E. GAMBLE.

Action by Frank B. Bricken against Short Sikes in assumpsit, and in tort, for the destruction of a horse and vehicle committed to his care for hire as a liveryman. Judgment for defendant, and plaintiff appeals. Affirmed.

POWELL & HAMILTON, for appellant. W. H. STODDARD, and BALL & SAMFORD, for appellee.

[Bricken v. Sikes.]

THOMAS, J.— (1) The delivery of a horse or vehicle to a livery stable keeper to be kept by him in his stable for hire creates a bailment which, being mutually beneficial to the parties, binds the livery stable keeper or bailee to take ordinary care of the property, which means, as has been often defined, that degree of care that a person of ordinary prudence would take of the property, under the same circumstances, if it were his own. —19 Am. & Eng. Ency. Law (2d Ed.) 432; *Swann v. Brown,* 51 N. C. 150, 72 Am. Dec. 568; *Seals v. Edmondson,* 71 Ala. 509; *Higman v. Camody,* 112 Ala. 267, 20 South. 480, 57 Am. St. Rep. 33; *Southern Ry. Co. v. Shelton,* 142 Ala. 371, 38 South. 805; *Prince v. Fair Association,* 106 Ala. 341, 17 South. 449, 28 L. R. A. 716.

(2-4) Either case or assumpsit will lie in favor of the bailor against the bailee for loss or injury happening to the property as a proximate result of the failure on the part of the bailee to use such care—case for negligence in performing the duty growing out of the contract of bailment, and assumpsit for a breach of the promise or undertaking therein contained ·(*Bank of Mobile v. Huggins,* 3 Ala. 206; *Hackney v. Perry,* 152 Ala. 632, 44 South. 1029; *Davis v. Hurt,* 114 Ala. 146, 21 South. 468)—and since under the Code of 1907 the two actions, when relating to the same subject-matter or arising out of the same transaction, may be joined in one complaint.—Code 1907, § 5329. And on the trial of the cause, when the bailor shows a contract of bailment and an injury to or loss of the property while in the care and custody of the bailee, or a failure to redeliver it on demand, or a redelivery of it in a damaged condition, the burden of proof is shifted to the bailee to acquit himself of negligence, which he may do, since he is not an insurer, by showing that the property was destroyed as the result of an accidental fire not attributable to his own fault or negligence. The burden is then shifted to the bailor, or plaintiff, to show that, notwithstanding the accidental fire, the property could and would have probably been saved but for the want of ordinary care and diligence on the part of the bailee in failing to take proper precautionary measures or safeguards for its protection or preservation against loss by fire.—Authorities supra; *Claflin v. Meyer,* 75 N. Y. 260, 31 Am. Rep. 467; *Schmidt v. Blood,* 24 Am. Dec. 153, notes; and cases cited in note to case of *Am. Brew. Ass'n v. Talbot,* 64 Am. St. Rep. 538.

(5) What constitutes such ordinary care and diligence in a given case is rarely ever a question of law, but is generally a question of fact, to be determined by the jury under all the surrounding facts and circumstances, whenever there is substantial evidence upon which to submit such an issue.—*Randle v. Birmingham Ry. Co.,* 158 Ala. 532, 538, 48 South. 114; 21 Am. & Eng. Ency. Law (2d Ed.) 498 et seq.; *East Tenn. Va. Co. v. Bayliss,* 74 Ala. 150; *Am. Brew. Ass'n v. Talbot,* 141 Mo. 674, 42 S. W. 679, 64 Am. St. Rep. 538; *Seals v. Edmondson; supra; Southern Ry. Co. v. Shelton, supra.*

(6) In the present case, it appeared without dispute that the plaintiff's horse, which had been intrusted to defendant as a livery stable keeper to keep for hire, was burned, while in the care and custody of defendant, as the result of the livery stable in which the horse was so being kept accidentally and from some unknown cause catching on fire and being consumed thereby during the late hours of the night after the community had retired and while defendant was at his home asleep, a distance of some blocks from the stable, and that it was impossible, after the fire was discovered, to save the horse, the fire having made such headway. The particular want of diligence imputed to the defendant by the plaintiff was the failure of the defendant to leave some person in charge of and to remain at the stable during the night. There is some evidence affording an inference that if the defendant had done this, such person would probably have discovered the fire in time to remove the horse from the burning building with safety.

The plaintiff's evidence tended to show that others in the community, engaged in the same business as defendant, customarily left persons in charge of their stables at night, and, for the purpose of emphasizing the necessity for defendant to do so as a general proposition, it was shown that at defendant's stable the conditions as to the arrangement and location of the stalls therein were such that it required more time and was more difficult to get a horse out in case of fire than at these other stables. Whether the defendant, in failing to leave a guard or watchman at his stable during the night, was negligent—that is, guilty of not using that degree of care which an ordinarily prudent man would have used with respect to his own property under the circumstances— was a question for the jury, whose

peculiar province it was to ascertain and determine, under all the facts and circumstances of the case, what an ordinarily prudent man would have done under the circumstances, and to judge the defendant and to measure his duties by that standard. It was not here a question of law for the court, and it consequently committed no error in its rulings involving this proposition, which consisted in sustaining defendant's demurrers to certain counts of the complaint setting out the particular act of alleged negligence mentioned, and in refusing the affirmative charge requested by plaintiff.—Authorities last cited.

(7, 8) In the case of *Seals v. Edmondson,* cited (an Alabama case), the question passed upon by the jury was very much like that here; that is, as to whether defendant, the bailee warehouseman, was negligent in not keeping a person in charge of the building at night, the accidental burning of which during Christmas, as the result of fireworks exploded in the streets by merrymakers, caused the loss of plaintiff's cotton stored therein. The court permitted the defendant's witness Horace Reddock to testify, over plaintiff's objection, that in his judgment it was not necessary for defendant to keep a person at his stable at night in order to protect the stock therein against fire. If proper objections had been interposed to the questions eliciting these answers, the court would have been reversed for admitting them, as they were the statement of a mere conclusion of the witness to a matter not within the range of admissible expert opinion, even if the witness had been shown to be an expert, though we cannot conceive how he could have been, on the proposition as to when it was and when it was not necessary for a livery stable keeper, in the exercise of the ordinary care and diligence which the law exacts of him, to keep a watchman at his stable at night. This was the very issue before the jury, involving a mixed question of law and fact, and was entirely foreign, as said, to the field of legitimate expert testimony. If the questions calling forth these answers had been objected to on the ground that they called for the conclusion of the witness, it would have been reversible error for the court not to sustain them. Here, however, the only objection interposed to the questions was, in substance, that the witness was not shown to have any knowledge of livery stables or of the livery stable business. Such an objection was not tenable, for even the existence of such knowledge on the part

of the witness would not, as seen, have made his answer any more competent as evidence.

(9, 10) There was no injury, if error, in the action of the court in sustaining defendant's objection to plaintiff's question to the witness Thomas, "Did defendant have a man that stayed at the stable at night?" as it appears that the witness subsequently answered the question, and as it further appears without dispute that defendant did not have a man that stayed at the stable at night.

(11) The questions propounded by plaintiff to the witness Morgan, to wit, "If a fire had broken out at the stable with nobody there, it would have been impossible for these horses to have gotten out, would it not?" and "If defendant had had somebody there when the fire occurred, there would have been some chance to have gotten them out, wouldn't there?" clearly called for the conclusion of the witness, and the court committed no error in sustaining defendant's objection to them. Besides, it appears the witness subsequently answered each question.

There was no injury, if error, in sustaining defendant's objection to plaintiff's question to the witness Lory, "But he [defendant] put you in there to take charge of things," since the witness subsequently answered the question.

We deem it unnecessary to consume further time in reviewing in detail the other assignments of error, since they are equally without merit as those to which we have adverted, and are not specifically urged in brief.

Affirmed.

ON REHEARING.

The complaint contained five counts, and demurrers were sustained to counts 1, 4, and 5 thereof, leaving counts 2 and 3, upon which the trial was had.

On application for rehearing, it is complained that, while the law as held in the opinion justified the action of the court in sustaining the demurrers to said counts 1 and 4, which ascribed the negligence of defendant to his act in failing to keep a watchman at the stable at night, yet that what was said in the opinion had no application to count 5, to which a demurrer, was, as said, also sustained, and which contained no averment

of the character mentioned, but merely averred, in general terms, without specifying the particular acts of diligence the defendant should have 'employed, that: "Defendant failed to exercise ordinary care in keeping said horse, buggy, and harness of the plaintiff, and negligently allowed the same to be burned up and destroyed by fire."

(12) With respect to this count we purposely omitted stating in the opinion a matter so manifest that we did not deem it necessary to state, especially in view of the learning and ability of appellant's counsel, and that is that, while the count was in no wise objectionable (*Leach v. Mayson,* 57 Ala. 155; *Va.-Carolina Chem. Co. v. Mayson,* 7 Ala. App. 590, 62 South. 253), there was certainly no injury whatever to the appellant in sustaining the demurrer to it, because it was a practical duplicate of counts 2 and 3, on which the trial was had, and under which the appellant had the right, and was allowed, to introduce all evidence to sustain his case that he could have introduced under count 5 had it remained in the pleading.—*Beall v. James,* 122 Ala. 414, 26 South. 1.

(13) Complaint is also made on application for rehearing that we did not discuss in the opinion charge 1, given at defendant's request. Likewise the action of the court in giving this charge was so clearly free from injury to appellant that we did not deem it necessary to point it out. The charge reads as follows: "The court charges the jury that they cannot find a verdict for the plaintiff unless they are reasonably satisfied from the evidence that the destruction of his horse was proximately caused by negligence of the defendant."

The giving of it did not constitute reversible error in this case, because, although the plaintiff is, as is suggested, suing for the loss of his buggy and harness, as well as for the loss of his horse, and although the charge asserts that the jury cannot find for plaintiff unless reasonably satisfied that the destruction of his horse (ignoring buggy and harness) was proximately caused by defendant's negligence, and although there may be cases where a plaintiff might recover for the loss of buggy and harness, if there was negligence as to them, notwithstanding there was no negligence as to the horse, whose loss was also sued for, yet in this case the facts are such that it appears without room for dispute that if there was no negligence on defendant's part as to

the horse, there was certainly none as to the buggy and harness —all being sued for in the same count as having been lost by the same negligence. Consequently the charge, when applied to the pleadings and facts of the case, was, if error, free from injury to appellant.

As to the other matter complained of on rehearing, to wit, that we erred in the testimony of defendant's witness Reddock, which was to the effect that in his judgment it was not necessary for defendant to keep a watchman at the stable at night, we may say that we find nothing in the authorities cited, or in the argument presented, to shake us in our conviction that we properly disposed of this matter in the opinion. Besides, we may say, in addition to what was there said, that it occurs to us that it is with poor grace, if with right, that appellant complains of the action of the lower court in letting in that evidence, when it appears that the court, at appellant's instance and in his favor, let in similar evidence of a positive character; that is, allowed appellant's witnesses to testify that in their judgment it was necessary for defendant to keep a watchman at the stable at night. Appellant's witnesses were in law, for reasons stated in the opinion, no better qualified to testify to this affirmative than defendant's witness was to the inegative mentioned; for each— the affirmative and the negative—was a mere conclusion of the witness as to a matter not within the range of expert testimony.

The application for rehearing is overruled.